NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1070                                          Appeals Court

VIRGILIO LIZARDO vs. NAYSI ORTEGA.

No. 16-P-1070.

Essex.     March 7, 2017. - June 12, 2017.

Present: Vuono, Meade, & Maldonado, JJ.

Divorce and Separation, Child support, Modification of judgment.
    Parent and Child, Child support. Public Welfare,
    Supplemental security income payments.

Complaint for support filed in the Essex Division of the
Probate and Family Court Department on April 27, 2006.

A complaint for modification, filed on August 27, 2015, was
heard by Peter C. DiGangi, J.

Anna Schleelein Richardson (Eve Elliott also present) for
the plaintiff.
Brittany Williams, Assistant Attorney General, for the
Department of Revenue.

MEADE, J.  The plaintiff, Virgilio Lizardo (father),

appeals from a modification judgment of the Essex Division of

the Probate and Family Court Department (Probate Court) that

increased his child support payments to the defendant, Naysi

Ortega (mother), for the parties' younger daughter (daughter),

who was born in June, 1995,[1] and that ordered him to pay the mother approximately $13,296 from a retroactive lump-sum distribution of Social Security disability income (SSDI) benefits, which was to be applied to the father's child support arrearage. The father contends that the judge (1) erred in ordering him to make a payment from his lump-sum SSDI benefits that exceeded the limit imposed by the Federal Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1673(b) (2012); (2) erred in ordering postminority child support absent written or oral findings regarding the factors set forth in the Massachusetts Child Support Guidelines (2013) (guidelines); (3) infringed on his equal protection rights by mandating postminority support notwithstanding that married parents have no such financial obligation; and (4) erred in failing to dismiss his complaint for modification and threatening him with contempt proceedings. For the reasons that follow, we reverse the portion of the judgment that ordered the father to make a child support arrearage payment to the mother in excess of the garnishment limitation imposed by the CCPA. In all other respects, we affirm.

1. Background. The record is largely silent regarding the history between the mother and the father, a veteran of the

---

[1] The parties' older daughter is not a subject of these proceedings.

United States Army.  It appears that they once were married but subsequently were divorced.  A complaint for support pursuant to G. L. c. 209, § 32F, was filed in the Probate Court on April 27, 2006, and the resulting judgment has been modified several times over the past decade.

On June 24, 2013, the mother filed a complaint for modification of a 2010 judgment that had ordered the father to pay seventy-five dollars per week in child support.  The mother claimed that because the daughter was graduating from high school and had been accepted to several colleges, the daughter required additional financial assistance from her parents.  On March 25, 2014, a modification judgment entered that incorporated and merged a written agreement between the parties pertaining to child support obligations.  In light of a change in his income, the father agreed to make child support payments by wage assignment in the amount of $150 per week, plus an additional fifty dollars per week that would be applied to his arrearage.  Although the father's child support obligation was a departure from the guidelines, pursuant to which he would have been required to pay $191 per week, the parties agreed that the deviation was in the best interests of the daughter.[2]

---

[2] The parties also agreed to cosign an educational loan that would pay for the daughter's college expenses once all other sources of financial aid had been exhausted.  Prior to the signing of such loan, the mother agreed to provide the father

A few months later, the father was hospitalized for depression and posttraumatic stress disorder.  Although he had been employed as a vocational rehabilitation specialist, this temporary position ended during his hospitalization.  On July 29, 2014, the father filed a complaint for modification of his child support obligation due to a loss of income.  While awaiting a hearing on his complaint, the father began to receive service-related disability benefits in the amount of $1,041.39 per month from the Department of Veterans Affairs (VA).[3]  At around the same time, the father started a compensated work therapy (CWT) program at the Bedford VA Medical Center, earning $400 per week.  On September 19, 2014, judgment entered on the father's complaint for modification.  The father's child support payments were reduced to seventy dollars per week, his additional payment of fifty dollars per week for his arrearage was preserved, and all prior orders were to remain in effect except as so modified.

In June, 2015, the father lost consciousness while sitting in his car at a stop sign.  As a consequence, his driver's license was revoked and he was unable to complete the CWT

with documentation of the daughter's full-time enrollment in college, as well as the sources and amounts of financial aid that the daughter had received.

[3] On December 1, 2014, the father's disability benefits from the VA increased to $1,059.09 per month, due to a cost of living adjustment.

program.  On August 27, 2015, the father filed another complaint

for modification, asserting that he had been unable to work due

to his disability, that his only source of income was his

disability benefits from the VA, and that he believed that his

daughter was emancipated.  The father requested a termination of

his child support obligation or, if his daughter was not

emancipated, an adjustment to reflect his disability and reduced

income.  He also sought the establishment of a more suitable

payment obligation with respect to his arrearage.  The mother

did not file any responsive pleadings to the father's complaint.

Two months later, the Social Security Administration (SSA)

notified the father that he was eligible to receive monthly SSDI

benefits in the amount of $1,196.40.  Around November 3, 2015,

the father began to receive such benefits, of which $519.60 was

withheld each month for the payment of his child support

obligation.  Because the SSA determined that the father had been

entitled to receive these benefits beginning in December, 2014,

the father anticipated that he would receive a retroactive lump-

sum SSDI payment.

A hearing on the father's complaint for modification was

held on November 10, 2015.[4]  The father first expressed

---

[4] Approximately one week before this hearing, the father
filed a motion for temporary orders.  He requested termination
of his child support obligation, an order to pay eighty-seven
dollars per week toward his arrearage in conformity with the

uncertainty about whether the daughter was enrolled in college, and whether she was financially dependent on the mother. Next, the father's attorney informed the probate judge that the father's child support arrearage was approximately $58,000, which included interest and penalties.[5] In response to the judge's inquiry why the father had "such an outrageously high arrearage," counsel explained that the father had been unable to work due to multiple hospitalizations and ongoing struggles with disabilities. Counsel told the judge that the father expected to receive a retroactive lump-sum SSDI payment soon, and counsel requested that the payment be split in half, with fifty percent being retained by the father and fifty percent going toward his arrearage. Because the amount of this payment had not yet been determined by the SSA, the judge ordered the matter continued for one month, and he stated that proceedings would resume in the Department of Revenue (DOR) session. In the meantime, the judge issued a temporary order directing the father to pay ninety-seven dollars per week in child support, plus an additional twenty-three dollars per week toward his outstanding

---

guidelines, and permission to maintain a bank account with up to $2,500 per month exempt from levy so long as his weekly payment toward the arrearage was timely made.

[5] As of November, 2015, the father owed $38,822.23 in arrearages, $13,184.87 in interest, and $6,591.90 in penalties. Of the arrearages, $27,644.52 was due to the mother, and $11,177.71 was due to the Department of Revenue for reimbursement of public assistance paid to the family.

arrearage. The order further stated that the father's retroactive lump-sum SSDI payment should be held in escrow by the father's attorney, pending further determination by a judge regarding those funds. The mother was ordered to provide documentation to the father, prior to the next hearing, regarding the daughter's enrollment in college.[6]

On December 17, 2015, the hearing resumed in the DOR session on the father's complaint for modification. According to the DOR's[7] unchallenged representation, the father had become satisfied that the daughter was enrolled in college. Nonetheless, given that the mother had not filed a responsive pleading, the father moved to withdraw his complaint so he could assess whether his VA benefits were going to be reduced in light of his receipt of SSDI benefits. See Mass.R.Dom.Rel.P. 41(a)(1). When the DOR indicated that it was ready to initiate contempt proceedings if the modification complaint was dismissed, the father decided to withdraw his motion to dismiss

_____

[6] Before the next hearing date, the father moved to voluntarily dismiss his own complaint for modification pursuant to Mass.R.Dom.Rel.P. 41(a)(1). As reason therefor, the father stated that, assuming that the mother provided adequate documentation of the daughter's enrollment in college, he was satisfied that the daughter was not emancipated. The father reserved the right to withdraw his motion in the event that the mother failed to produce such documentation as ordered by the judge.

[7] The DOR was acting on behalf of the mother, as it also does on appeal.

and, instead, to pay $123 per week in child support, which was the amount set forth in the guidelines. With respect to the father's arrearage, the DOR explained that it was holding approximately $10,296 that the SSA had withheld from the father's retroactive lump-sum SSDI payment, and the father's attorney stated that he held the remaining $6,864 of such payment in escrow.[8] The father argued that $10,296 should go toward his arrearage, and that the escrowed funds should be released to him because the CCPA, 15 U.S.C. § 1673(b)(2) (2012), only permits the DOR to garnish, at most, sixty-five percent of his lump-sum SSDI benefits for the payment of his arrearage. The judge declined to give the father all of his escrowed funds.

Final judgment on the father's complaint for modification entered on December 21, 2015. The judge increased the father's child support payments to $123 per week, in conformity with the guidelines. With respect to the father's retroactive lump-sum SSDI payment, the judge ordered the DOR to release all of the money it held to the mother, and he ordered the father's

---

[8] As the DOR notes in its brief, nothing in the record indicates the exact amount of the father's entire retroactive lump-sum SSDI payment. Based on the unchallenged representation from the DOR that it held $10,296 (which corresponds to the amount withheld by the SSA), and the unchallenged representation from the father's counsel that he held $6,864, we shall assume that the father's total retroactive lump-sum SSDI payment was $17,160. We note that a financial summary report from the DOR showed that the amount of arrears paid in December, 2015, was $10,427.60.

attorney to distribute $3,000 from the escrow account to the mother, with the remainder going to the father. The father's checking account was deemed to be exempt from any lien by the DOR. The present appeal ensued.

2. Discussion. A. Standard of review. Our review of a child support modification judgment is limited to whether the judge's factual findings were clearly erroneous, whether there were other errors of law, and whether the judge appears to have based his decision on the exercise of sound discretion. See Wasson v. Wasson, 81 Mass. App. Ct. 574, 576 (2012). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (citation omitted).

B. Garnishment in conformity with CCPA. The father contends that the judge erred in determining that the mother was entitled to receive approximately $13,296 from his retroactive lump-sum SSDI payment, which represented more than seventy-seven percent of such payment, where garnishment for arrearages is capped at sixty-five percent under the CCPA, 15 U.S.C. § 1673(b)(2) (2012). The father claims that sixty-five percent of his lump-sum distribution already had been withheld by the

DOR as payment toward his arrearage.  That being the case, the father argues that the additional payment of $3,000 to the mother from the funds being held in escrow by the father's attorney caused the father's garnishment to exceed the limit permitted under Federal law.[9]  We agree.

The collection and distribution of child support payments by a State are governed by the Child Support Enforcement Act (CSEA), Title IV, Part D of the Social Security Act, 42 U.S.C. §§ 651-669b (2012).  See Rosen v. Rosen, 90 Mass. App. Ct. 677, 682 & n.8 (2016).  In Massachusetts, the DOR has been designated as the Commonwealth's so-called "IV-D agency" charged with responsibility for providing child support enforcement services, including the establishment, modification, and enforcement of child support obligations.  G. L. c. 119A, §§ 1, 1A.  See Morales v. Morales, 464 Mass. 507, 510 n.5 (2013).  Pursuant to G. L. c. 119A, § 6(a), the DOR is authorized to institute collection procedures for all accrued child support arrearages, including income garnishments, tax refund intercepts, property

---

[9] The father states that he is not seeking the return of the $3,000 because he wants to fulfil his child support obligation as soon as possible.  He is concerned, however, that it appears to be a common practice for the DOR to pursue, and Probate Court judges to order, child support payments in excess of the limits specified in the CCPA.  Given that the issue has been fully briefed and argued by the parties, is one of public importance, and is likely to recur, we address its merits.  See Smith v. McDonald, 458 Mass. 540, 543 n.4 (2010); Custody of Victoria, 473 Mass. 64, 65 n.2 (2015).

liens, and contempt proceedings.  Such authority, however, is not unlimited.

Congress enacted the CCPA for the purpose, among others, of enabling debtors to retain sufficient earnings to support their basic needs, thereby averting the necessity of having to declare bankruptcy.  See Kokoszka v. Belford, 417 U.S. 642, 651 (1974). The CCPA establishes the maximum amount of "aggregate disposable earnings of an individual for any workweek" that can be garnished to enforce a support order.  15 U.S.C. § 1673(b)(2) (2012).  The term "earnings" means "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."  15 U.S.C. § 1672(a) (2012).  The term "disposable earnings" means "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."  15 U.S.C. § 1672(b) (2012).  Under the CCPA, where an individual is not supporting a spouse or dependent child who is not the subject of the support order, and where support has been owed for more than twelve weeks, garnishment shall not exceed sixty-five percent.  15 U.S.C. § 1673(b)(2) (2012).  The CCPA further provides that "[n]o court of the United States or any State, and no State (or officer or agency

thereof), may make, execute, or enforce any order or process in violation of this section."  15 U.S.C. § 1673(c) (2012).

The father's retroactive lump-sum distribution of SSDI benefits constituted earnings.  Such payment was the equivalent of wages because it represented compensation for personal services that was lost as a consequence of the father's inability to work once he became disabled.  See Martin v. Martin, 70 Mass. App. Ct. 547, 549-550 (2007), and cases cited.  See also United States v. Ashcraft, 732 F.3d 860, 864 (8th Cir. 2013) (disability payments are designed to function as wage substitutes and, therefore, are "earnings"); Rosenberg v. Merida, 428 Mass. 182, 186 (1998), citing Miller v. Miller, 890 P.2d 574, 576-577 (Alaska 1995) (SSDI payments represent earnings from parent's past contributions to Social Security Trust Fund).  See generally guidelines § I.A (defining sources of income).[10]  In our view, the father's lump-sum SSDI payment constituted earnings during the work week in which he (and the DOR on his behalf) received it.  We have found no authority, and

---

[10] We do not decide which non-Social Security lump-sum payments constitute earnings within the meaning of 15 U.S.C. § 1672(a) (2012).  Cf. Aetna Cas. & Sur. Co. v. Rodco Autobody, 965 F. Supp. 104, 109 (D. Mass. 1996) ("[L]ump sum severance payments by the employer do not fall within the protective umbrella of 15 U.S.C. § 1673"); Pallante v. International Venture Invs., Ltd., 622 F. Supp. 667, 669 (N.D. Ohio 1985) (The fact that a severance payment is made in a lump sum places it outside the statutory provisions").  See also Kokoszka v. Belford, 417 U.S. at 651 (exploring reach of 15 U.S.C. § 1673).

the DOR has cited none, for the proposition that this payment should be retroactively reapportioned over the ten months from December, 2014, through September, 2015, when the father was entitled to receive SSDI benefits.  Given that the father's refund of such benefits was a lump-sum disbursement, we treat it as a single aggregate distribution for one work week.

As we have noted, the father only takes issue with the portion of the judgment that directed the father's attorney to release an additional $3,000 from the escrow account to the mother.  The father correctly asserts that the DOR already held $10,296 from his lump-sum SSDI distribution as payment toward his arrearage.  This latter amount represented sixty percent of the total SSDI disbursement of $17,160.  See note 8, supra. Because the maximum allowable garnishment under the CCPA for an individual in the father's circumstances is sixty-five percent, only an additional $858 could be released from the escrow account to the mother, bringing the father's total garnishment to $11,154, or sixty-five percent of his retroactive lump-sum SSDI payment.  The judge erred in ordering the release of the $3,000 to the mother because such payment resulted in a garnishment that exceeded the permissible limit under the CCPA. The purpose of the CCPA -- to protect a basic level of income -- is defeated if a noncustodial parent is required to make payments toward arrearages in excess of the statutory limits.

C.  Postminority support.  The father contends that the judge erred by ordering postminority support for the daughter without making any findings regarding the factors set forth in the guidelines.  He asserts that the judge considered only whether the daughter was enrolled in college, and whether there was an outstanding child support arrearage.  No evidence was presented, and no findings were made, as to whether the daughter remained financially dependent on the mother.  In the father's view, the judge abused his discretion by ordering the father to pay postminority support.  We disagree.

At the hearing on December 17, 2015, the DOR informed the judge that the father was satisfied that the daughter was enrolled in college.  The father, who was represented by counsel, did not challenge the DOR's statement.  Moreover, the father subsequently agreed to the imposition of a weekly child support obligation of $123, which was the amount suggested by the guidelines.  In doing so, the father withdrew his motion to dismiss his complaint for modification under Mass.R.Dom.Rel.P. 41(a)(1).  It is apparent from the record that the father's decision was influenced by the fact that the DOR was prepared to initiate contempt proceedings if the father did, in fact, dismiss his own complaint.  Nonetheless, as the agency charged with responsibility for providing child support enforcement services, the DOR would have been acting well within its

statutory authority by commencing such proceedings.  See G. L. c. 119A, § 6(a) (DOR authorized to initiate contempt proceedings to collect all accrued child support).  Had a contempt proceeding occurred, the father could have mounted a defense by arguing that he genuinely did not have the ability to comply with existing child support orders.  Given the alternatives, the father considered his options and decided to accept the imposition of a weekly child support obligation of $123.  In these circumstances, the father has waived his right to argue on appeal that the judge abused his discretion in ordering postminority support.  See Moran Travel Bureau, Inc. v. Clair, 12 Mass. App. Ct. 864, 865 (1981); Litchfield v. Litchfield, 55 Mass. App. Ct. 354, 357 (2002).

D.  Right to equal protection.  The father contends that the judge infringed on his right to equal protection under the law by mandating the payment of postminority support for the daughter notwithstanding the fact that married parents have no such financial obligation.  However, because the father did not raise this argument in the Probate Court, it is waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

3.  Conclusion.  So much of the December 21, 2015, modification judgment as ordered the father to pay the mother an additional $3,000 (beyond the $10,296) toward his child support arrearage, an amount that exceeded the maximum allowable

garnishment under the CCPA, is stricken from the judgment. Given that the father does not seek a return of his overpayment, see note 9, <u>supra</u>, we need not remand the matter to the Probate Court for further proceedings.  In all other respects, the December 21, 2015, modification judgment is affirmed.

<u>So ordered</u>.