## CHARLES G. FREIDUS vs. STACI R. HARTWELL.

No. 10-P-210.

Middlesex. March 11, 2011. - September 28, 2011.

Present: GRASSO, GRAHAM, & HANLON, JJ.

*Divorce and Separation,* Separation agreement, Division of property, Attorney's fees. *Practice, Civil,* Costs. Contempt.

In a contempt action arising from a judgment of divorce nisi, into which the parties' separation agreement was incorporated but not merged, a Probate and Family Court judge, having concluded that neither party was in contempt, correctly declined to award the wife costs and attorney's fees under a provision of the agreement [501-503]; further, the judge did not abuse her discretion in declining to award costs and attorney's fees to the wife pursuant to G. L. c. 208, § 38, where the judge made no finding of misrepresentation or fraudulent conduct on the part of the husband [503-504]; finally, this court declined to award the wife appellate attorney's fees under either the provision of the agreement or G. L. c. 208, § 38 [504].

There was no merit to a wife's claim that a probate judge abused her discretion in declining to find the husband in contempt in an action arising from a judgment of divorce nisi. [504]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on March 24, 2006.

Complaints for contempt, filed on June 21 and July 5, 2007, were heard by *Leilah A. Keamy,* J.

*Wendy H. Sibbison* for the wife.

*Paul W. Morenberg* for the husband.

GRAHAM, J. The central issue presented by the former wife on this appeal from a judgment on cross-complaints for contempt is whether she was entitled to contractual attorney's fees and costs incurred by her in "enforcing" the parties' separation agreement, which was incorporated in the judgment of divorce nisi but survived the judgment as an independent contract. As we conclude that the judge did not err by failing to award the wife contractual attorney's fees (or statutory attorney's fees pursuant to G. L. c. 208, § 38), we affirm the judgment.

1. *Background.* The parties, who were married in 1990, oper-
ated an antiques and collectibles business on property owned by
the husband on Felton Street in Waltham. The parties also lived
together at that location.[1] On March 6, 2006, the husband locked
the wife out of the loft area at the Felton Street property (the
husband remained in the loft area), leaving her to reside in the
former office, which the judge characterized as the "marital
apartment." Shortly thereafter, the husband filed a complaint for
divorce.

By a judgment of divorce nisi dated April 10, 2007, the par-
ties were ordered to comply with the terms of their separation
agreement of same date, which, as we have stated, was incor-
porated, but not merged, in the judgment and survived with
independent legal significance. The agreement contains numer-
ous provisions, several of which we highlight below. Article I,
paragraph 1, provides that the parties intend to divide between
them all of their tangible personal property and will engage the
services of a special master to help them to accomplish the
division.[2] Article II, paragraph 4, provides that the husband shall
retain his right, title, and interest in the Felton Street property
but shall pay the wife the sum of $216,000 for her interest in
the property on or before July 9, 2007.[3] Finally, article III,
paragraph 15, entitled "Costs in Case of Breach," provides: "If
either the [h]usband or the [w]ife shall commit a breach of any
of the provisions of this Agreement and legal action reasonably
shall be required to enforce such provisions and shall be insti-
tuted by the other, the party judicially determined to be in

[1]The parties lived in an area of the property that included a 2,500 square
foot loft, an 800 square foot office, and a 1,500 square foot basement. The
"marital residence," which consisted of the loft and office, is located above
an 8,000 square foot antiques cooperative.

[2]Paragraph 1 further provides that all family and premarital items in the
other party's possession shall be transferred back to that party. The parties
agreed to then walk through their marital residences and the basement area
and alternately select choices from their joint marital property. There were
over 1,000 items in the basement area, over 500 items in the loft, and over
500 items in the marital apartment. At some point in June, 2007, the parties
agreed to a named individual as special master to assist them in dividing their
tangible personal property.

[3]The husband was to advance the wife $5,000 against the $216,000 on or
before April 20, 2007, leaving the sum due on or before July 9, 2007, at
$211,000.

breach shall be liable for all court costs and counsel fees incurred in instituting and prosecuting such action."

On June 21, 2007, the husband filed a complaint for civil contempt alleging that the wife had violated numerous orders of the court as set out in the divorce judgment. Although the husband claimed, among other things, that the wife had refused to cooperate with the special master in dividing their personal property, he made no allegation that the wife had taken any personal property that was subject to division. On or about July 5, 2007, the wife also filed a complaint for contempt alleging various violations of the orders contained in the divorce judgment.

Meanwhile, the special master visited the Felton Street property on several occasions and was provided with inventory lists that had been prepared by the parties in July, 2006. On one such visit the husband, outside the wife's presence, presented the special master with photographs of the marital apartment where the wife resided. The husband alleged that the photographs were taken by him on March 4, 2006, and that all the items pictured in the photographs were in the wife's space when the parties began residing separately on March 7, 2006. Upon entering the marital apartment, the husband claimed that certain valuable items of personal property were missing or damaged. The wife denied taking, removing, or destroying any of the property photographed by the husband. The special master made the assumption that the wife had taken the alleged missing property.[4] He declined to complete a division of the parties' tangible personal property because of the parties' dispute concerning the property.

Alleging that the special master had made a "finding" that the wife had removed from the Felton Street property a substantial number of valuable antiques, jewelry, and objects d'art belonging to the husband (and which the husband believed to be worth more than $250,000), the husband, on July 10, 2007, filed an emergency motion to stay judgment nisi relative to the division

---

[4]The special master based his assumption, among other things, on his determinations that (1) the items pictured in the husband's photographs were not in the marital apartment or in the loft area, (2) the wife refused to take a polygraph test, and (3) the wife opposed the husband being polygraphed. (The judge later found that it was outside the scope of the special master's appointment to request that the parties submit to a polygraph test).

of property and a request to delay payment to the wife of $211,000 representing the wife's interest in the Felton Street property.[5] That same day a judge of the Probate Court endorsed the motion as follows: "Denied; except [w]ife shall receive $11,000 forthwith of $211,000 due; balance of $200,000 to be placed into escrow and held by counsel for [h]usband pending further order(s) of the [Probate and Family] Court."[6]

After four partial days of trial in June, 2008, a mistrial was entered when the probate judge then assigned to the case determined that the matter could not be concluded prior to his retirement. In June, 2008, the parties also resolved a majority of the husband's contempt issues. The remaining issues for trial included the husband's allegation that the wife failed to cooperate with the special master; the division of the parties' tangible personal property; the payment of the $200,000, plus interest, that was escrowed "and the remaining amount owed to the [wife] for her interest" in the Felton Street property; and damages, including attorney's fees and costs.

The matters were finally tried over a three-day period in April, 2009.[7] The judge issued a memorandum and findings in which she noted, inter alia, that the parties' April, 2007, separation agreement provided specifically that it incorporated the parties' entire understanding and was intended to be a full and final settlement of any and all claims and rights each may now or hereafter have against the other for his or her support and maintenance and for the division of property pursuant to G. L. c. 208, § 34. Continuing, the judge found that during the divorce litigation the parties both raised issues of missing property and disputed the itemization of personal property — yet they executed the separation agreement without itemized lists, photographs, or statements of value.[8] The judge also stated that the husband admitted in his trial testimony that his allegations that the wife

---

[5]The wife also moved out of the marital apartment on July 10, 2007.

[6]Both parties also make reference in their briefs to a Probate and Family Court hearing on July 13, 2007, at which the judge indicated that the husband's complaint for contempt would encompass his allegations that the wife had improperly removed various items of personal property.

[7]As the wife "accepts all the trial judge's subsidiary findings of fact," she has not included the trial transcript in the appendix.

[8]The judge found that prior to the parties' execution of the agreement and

stole, hid, or damaged certain items of tangible personal property were based solely upon his assumptions.

The judge did not find "convincing" the husband's position that the alleged predivorce photographs taken in the former marital residence show personal property that is now "missing." The judge stated that there was no substantiation or evidence as to exactly when the photographs were taken or when either of the parties had control or possession of the items shown. The husband, the judge found, had many opportunities to take the photographs and then later, through March 7, 2006, sell, trade, or otherwise remove the photographed items from the premises.[9] In addition, the judge found that the husband had not proved that the wife did not cooperate with the special master; to the contrary, the testimony revealed that the wife was cooperative.

Finally, the judge stated that the wife had taken the position that since the husband had not proven that she took or removed the items in question the husband must have retained these items. The wife claimed that she was entitled to "her one-half share" of the alleged missing items which the husband valued at approximately $200,000 ("despite her objection to assertion that the [husband] lack[ed] the ability to testify as to value and that his opinion [was] biased and self-serving").[10] The judge stated:

> "[T]he same lack of evidence that unravels the [husband's] claim applies to the [wife]. At no time during the divorce proceeding or at the divorce trial did the [wife] establish a value for the personal property subject to division. The [a]greement entered into by *both* parties regarding the division of personal property is devoid of values and itemization of personalty. It cannot be cured on contempt by either party.
>
> "Accordingly, the court finds no basis to award attorney's

the judgment, the husband alleged missing property and accused the wife of removing valuable antiques and jewelry (which the wife denied). The judge stated that the husband had ample opportunity to pursue his claim.

[9]With respect to the husband's additional claim that the wife had chained and damaged a valuable cabinet (a claim denied by the wife), the judge stated that there was no evidence as to when the chain went on the cabinet or when the brasses were, if ever, removed.

[10]The wife also requested in her proposed judgment that she be compensated $100,000 for her one-half share of the alleged missing items.

fees and costs to either party. They are each bound by the strict terms of the [a]greement and must bear the costs respectively in this proceeding." (Emphasis in original.)

By a "Judgment of Contempt" dated May 5, 2009, on the parties' cross-complaints for contempt, the judge concluded that neither party was in contempt.[11] The judge further ordered that within thirty days of the receipt of the judgment the parties were to meet at the former marital home to divide the tangible personal property pursuant to the terms of the separation agreement of April 10, 2007.[12] The judge also ordered that in accordance with article II, paragraph 4, of the separation agreement the husband's counsel as escrow agent was to pay forthwith to the wife the entire escrow balance ($200,000 plus interest from July 9, 2007 through the date of payment). In addition, the judge ordered that "[e]ach party shall be responsible for payment of their respective attorney's fees and costs incurred in connection with the contempt proceedings."

After the wife's motion "to reconsider law and to amend paragraph 3 [pertaining to attorney's fees]" of the judgment was denied, the wife filed her notice of appeal.

2. *Discussion.* (a) *Contractual attorney's fees.* The primary thrust of the wife's argument on the appeal is that the judge erred by failing to award her attorney's fees and costs pursuant to article III, paragraph 15, of the separation agreement. More specifically, she asserts that the Probate and Family Court, with the parties' assent, tried her case as an action to enforce specifically the separation agreement (which would include the attorney's fees provision of paragraph 15) as well as an action for civil contempt. She states that the parties' plain intent, as evidenced by paragraph 15, was to compensate a party who needs a judicial order to secure the fruits of her contract, so that the cost of enforcement does not reduce her settlement. In the wife's view, the husband, "effectively," was "judicially determined [by the Probate Court] to be in breach" of the agreement by (1) attempting to relitigate an issue (i.e., the missing property) in his

---

[11]The judge stated, inter alia, in his memorandum that the husband had not "satisfied his burden."

[12]The judge specified the method and distribution of the personalty.

post-divorce contempt action that was settled by the "full and final settlement" provision of the agreement, and (2) using false accusations of theft to deprive the wife of the fruits of her contract in violation of the standards of good faith and fair dealing, which are inherent in all separation agreements.

Even were we to assume, as the wife asserts, that her action invoked the equity jurisdiction of the Probate and Family Court to specifically enforce the agreement, we perceive no reason to disturb the judgment in this case with respect to attorney's fees. See *Stansel* v. *Stansel*, 385 Mass. 510, 515 n.5 (1982) (Probate and Family Court had jurisdiction under G. L. c. 215, § 6, to specifically enforce the parties' separation agreement); *Colorio* v. *Marx*, 72 Mass. App. Ct. 382, 389 (2008) (although husband not adjudged in contempt, judge properly could enforce parties' separation agreement to ensure that wife received her agreed share of marital estate).[13] Pursuant to article III, paragraph 15, a party is liable for court costs and counsel fees where he or she is "judicially determined to be in breach." Here, the wife asserts that the judge effectively determined the husband to be in breach of the agreement by attempting to litigate in his contempt action an issue settled by the agreement. The judge, however, made no specific determination that the husband was in breach, nor do we think that such a determination is necessarily implicit in the judge's findings and rationale. It is true that the judge made findings, and discussed, the husband's opportunities to pursue missing property claims prior to his execution of the settlement agreement (which contains the "full and final settlement" provision). A review of the judge's memorandum and findings, in their entirety, indicate that the judge considered and weighed the husband's evidence concerning the alleged missing items and, as we have stated, found specifically that the husband had not sustained his burden. The judge also indicated that *both*

---

[13]The husband asserts in his brief that the case was tried as a simple contempt action; there was no trial by consent of breach of contract claims. We note that certain papers filed by the wife indicate that she was seeking specific performance of the parties' separation agreement, and the judge made reference to the doctrine of specific performance in her memorandum and rationale for decision. (The judge's conclusions of law, however, refer only to principles applicable directly to the litigation of civil contempt actions.) In the absence of a trial transcript, we are unable to determine whether additional statements or representations were made at trial that shed light on how the matter was tried.

parties in the present actions made claims concerning the alleged missing property and that the same lack of evidence that unraveled the husband's claim applied to the wife's claim. In the circumstances, we decline to disturb the divorce judgment.

As to the wife's argument that the judge effectively determined that the husband was in breach of the agreement's implied covenant of good faith and fair dealing by "using false allegations of theft to deprive the wife of the fruits of her contract," the judge made no finding that the husband had falsely accused the wife of theft. See *Krapf* v. *Krapf*, 439 Mass. 97, 103 (2003) ("Parties to a separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations"). It is to be noted that the judge declined to adopt the wife's proposed finding that she "did not take, remove or destroy any of the property photographed in [the husband's] pictures," finding instead that the wife "denied taking, removing or destroying any of the property photographed in [the husband's] pictures."[14]

(b) *Statutory attorney's fees.* The wife argues that the court abused its discretion by failing to award her statutory attorney's fees pursuant to G. L. c. 208, § 38. She notes, correctly, that a judge may make an award of such fees "to one who successfully defends a frivolous contempt action." *Krock* v. *Krock*, 46 Mass. App. Ct. 528, 533 (1999). In the wife's view, an award of statutory fees to her in the present case is particularly appropriate in view of the Probate and Family Court's "finding" that the husband's claims had no basis in the evidence and his conduct, including his misrepresentation, which involved three separate meritless claims that went to trial: that the wife stole property

---

[14]The wife also argues that she is entitled to consequential damages (including automobile finance charges, credit card interest and late fees, and life insurance policy interest) caused by the husband's unlawful stay of her contractual right to $200,000. We do not find convincing the wife's position that the stay was unlawful. That aside, the husband asserts in his brief that the wife failed to assert her legal claim for damages at trial (although the judge noted that the remaining issues for trial included damages) and attempted to first raise her alleged losses in her proposed memorandum and/or findings. In the absence of a trial transcript, we are unable to determine whether the issue of damages was properly presented at trial, see *Breyan* v. *Breyan*, 54 Mass. App. Ct. 372, 382 (2002), or whether there was competent evidence of damages. See *National Grange Mut. Ins. Co.* v. *Walsh*, 27 Mass. App. Ct. 155, 157-158 (1989).

worth one-quarter of a million dollars, vandalized a valuable cabinet, and obstructed the division of marital property. See *Kelley* v. *Kelley*, 64 Mass. App. Ct. 733, 742 (2005) (judge abused his discretion in denying the wife's motion for attorney's fees and costs).

"A judge has broad discretion in awarding attorney's fees under G. L. c. 208, § 38, and, it follows, broad discretion to deny an award." *Wolcott* v. *Wolcott*, 78 Mass. App. Ct. 539, 546 (2011). Here, the judge made no finding of misrepresentation or fraudulent conduct on the part of the husband. Moreover, the judge noted that both parties had made claims concerning the alleged missing items. We cannot say that the judge abused her broad discretion in declining to award the wife statutory attorney's fees. See *Drapek* v. *Drapek*, 399 Mass. 240, 248 (1987); *Kendall* v. *Kendall*, 426 Mass. 238, 251-252 (1997), cert. denied, 524 U.S. 953 (1998).

(c) *Contempt.* Upon review of the court's memorandum and findings, we fail to discern merit in the wife's argument (grounded largely in her assertions that the husband made false statements and engaged in egregious conduct to subvert and undermine the divorce judgment) that the judge abused his discretion in finding the husband not guilty of contempt.

(d) *Appellate attorney's fees.* In view of the decision we reach, we deny the wife's request to order the husband to pay her reasonable attorney's fees for the appeal pursuant to article III, paragraph 15, of the parties' agreement. We also deny the wife's request for appellate attorney's fees and costs pursuant to G. L. c. 208, § 38.

> *The judgment dated May 5, 2009,*
> *is affirmed.*