NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-274                                          Appeals Court


       SUSAN GODFRIED FEINSTEIN  vs.  STEVEN FEINSTEIN.


                       No. 18-P-274.

       Norfolk.      January 14, 2019. - May 2, 2019.

           Present:  Agnes, Sacks, & Ditkoff, JJ.


Contempt. Contract, Separation agreement. Divorce and
     Separation, Separation agreement, Child support,
     Modification of judgment, Parent coordinator, Attorney's
     fees. Parent and Child, Child support. Practice, Civil,
     Contempt, New trial, Service, Computation of time,
     Attorney's fees. Rules of Domestic Relations Procedure.


     Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on December 21, 2011.

     Complaints for contempt, filed on August 16 and September
21, 2017, were heard by Elaine M. Moriarty, J., and a motion for
a new trial was considered by her.


     Elaine M. Epstein (Richard M. Novitch also present) for the
mother.
     Kelly N. Griffin (Donald G. Tye also present) for the
father.


     DITKOFF, J.  The father, Steven Feinstein, filed a

complaint for contempt against the mother, Susan Godfried

Feinstein, alleging that she violated merged provisions of their

separation agreement. A Probate and Family Court judge found the mother not guilty of contempt but substantially reduced the father's obligation to pay for the older child's college education. On the mother's appeal, we conclude that the judge has the authority to modify a judgment based on the merged provisions of a separation agreement upon a finding of a noncontumacious violation of an agreement term merged into the divorce judgment, but that such modification must be based on a finding of a material change in circumstances. As the record does not reflect such a finding, and the record does not reveal an obvious material change in circumstances, we vacate the judgment in part and remand for further consideration. Further concluding that the mother's motion for a new trial or to alter or amend the judgment under Mass. R. Dom. Rel. P. 59 was timely, we vacate the denial of that motion.

1. Background. In December 2011, the parties separated after fourteen years of marriage. In December 2014, they signed a comprehensive separation agreement (agreement) to settle their financial affairs and to govern the raising of their two sons. Pertinent here, they agreed to "confer with each other in an effort to reach mutual agreement concerning major life decisions not part of the children's daily routine which affect their well-being, including without limitation . . . religious upbringing[] [and] educational choices and alternatives." They

ascribe to the Jewish faith, and the agreement contains a schedule of which parent would have the younger child for which Jewish holidays.

The agreement provides that the older child and the father shall remain in counselling with a named psychologist. Parenting issues regarding the older child are to be addressed by the psychologist in the first instance. The parties agreed to submit any "non-financial disputes regarding the[] children, limited to disputes regarding each child's education, physical and psychological health . . . , religious education, after school and extra-curricular activities, and/or welfare and/or changes to the Parent Schedule" to a parenting coordinator (in this case, a licensed social worker) prior to submitting them to the court.

Regarding college, the parties agreed that "[t]he choice of college or other educational institution shall be made jointly, with due regard to each child's wishes, welfare, needs and aptitudes. Neither party shall make a commitment to an educational institution for a child without the prior agreement of the other party, which agreement shall not be unreasonably withheld, conditioned or delayed." The cost of college is to be paid initially by college educational accounts held by the father. Expenses not covered by those accounts or scholarships are to be paid fifty-five percent by the father, and forty-five

percent by the mother.  The expenses contemplated by the agreement include "tuition, room and board while residing away from both parties during college or post-secondary educational program, registration, books, activity and other fees, books, and other expenses customarily appearing on the billing statements from any educational institution, . . . computer and reasonable transportation to and from school."

On December 22, 2014, a Probate and Family Court judge approved the agreement and issued a judgment of divorce nisi. Although numerous provisions of the agreement survive as an independent contract, the provisions described supra merged with the judgment and did not survive as an independent contract.

The father quickly became concerned that the children were not actively practicing Judaism.  In or about July 2015, the father brought his concerns about the younger child's religious upbringing to the parenting coordinator, who apparently stated that the father could arrange for religious education himself during his parenting time.  When the younger child proved resistant, the father did not pursue the matter.

The older child's senior year in high school began in September 2016.  The representations of counsel, credited by the judge, reflect that the mother believed that the older child was discussing his college application process with the father during the sessions with the psychologist.  The father asserts

that the psychologist "did not want to get involved in any of this process."[1]

The father is a professor at a private university in Massachusetts, and it appears that his children would be entitled to attend his university tuition-free.  In December 2016, the older child sent an e-mail to his father, copying his mother, that he would not be applying to the father's university because he had a strong interest in computer science, and that university did not have a strong computer science program.  He also stated that he did not want to attend the university at which his father taught and, in any event, wanted a college with warmer weather.  The child reported in the e-mail that he had told his father the schools to which he was applying and had shared his "SAT scores, [his] video and other important information."  This e-mail was presented to the judge.  The record reflects no contemporaneous objection by the father to the child's decision not to apply to the father's university or to a college in Massachusetts.

---

[1] In fact, based on a meeting with the mother, the parenting coordinator suggested in an e-mail sent to the father in September 2016 that she and the father meet to discuss the older son's college application plans.  The father replied that the discussions should occur with the psychologist and be initiated by the older child.  This e-mail was attached to the mother's rule 59 motion, and thus the judge did not receive it until after she had ruled.

On April 24, 2017, seven days before the date the father believed that the college decision had to be made, the father first expressed concerns about the college selection process to the mother, in the form of a letter from father's counsel to mother's counsel requesting numerous documents, including a list of colleges to which the older child had been admitted.  As the child had been admitted to one college, the University of Arizona, the mother committed the child to the University of Arizona without consulting the father.  The father learned of the commitment in May 2017 from a high school guidance counsellor.

In August 2017, the father filed a complaint for contempt, alleging that the mother violated provisions of the agreement, which were merged into the divorce judgment, by unilaterally committing the older child to the University of Arizona and by "[d]iscouraging the children from practicing the Jewish faith."[2] The mother's answer requested attorney's fees for opposing the complaint for contempt.  The mother also filed her own complaint for contempt based on the father's failure to pay his share of the older child's college expenses.[3]

---

[2] The father accuses the mother of attending a Christian church and observing Christian holidays.  The mother denies this.

The judge did not hold an evidentiary hearing but instead reviewed the pleadings and heard the representations of counsel. The judge found that the agreement did not require that the children be raised in the Jewish faith. The judge further found that the judgment required that the older child's college decision be made jointly, but the judge found no willful violation by the mother in light of the complexity of the communication issues. Accordingly, the judge found the wife not guilty of contempt. The judge found that "nonetheless there is an impact on Father's financial obligations under the agreement by [the mother's] unilateral action" and thus required the father to pay only fifty-five percent "of the cost of tuition [and] room and board he would have been responsible for if child had attended U. Mass." She made the mother responsible for the balance. She also denied attorney's fees to both parties.

The judgment was docketed November 8, 2017, a Wednesday. On November 20, 2017, a Monday, the mother served a motion for a new trial or to alter or amend the judgment under Mass. R. Dom. Rel. P. 59. The judge denied this motion as untimely. This appeal followed.

---

[3] No ruling on this complaint had occurred by the time of the filing of the notice of appeal, and this complaint is not before us.

2.   Modification of payment of postsecondary education expenses.  "To prove civil contempt a plaintiff must show two elements:  there must be (1) clear disobedience of (2) a clear and unequivocal command."  Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018).  These elements must "be supported by clear and convincing evidence."  Rosen v. Rosen, 90 Mass. App. Ct. 677, 691 (2016), quoting Birchall, petitioner, 454 Mass. 837, 853 (2009).  Upon finding a contempt, a judge has "broad equitable powers to fashion appropriate remedies."  Cabot v. Cabot, 55 Mass. App. Ct. 756, 768 (2002).

"A Probate Court has power to modify a support order in the context of either a complaint for contempt or a complaint for modification."  Kennedy v. Kennedy, 17 Mass. App. Ct. 308, 312 (1983).  A modification on a complaint for contempt may occur even in the absence of a contempt finding.  See Bloksberg v. Bloksberg, 7 Mass. App. Ct. 233, 234-235 (1979).  Accord Smith, 93 Mass. App. Ct. at 364-365 (remanding for reconsideration of modification order on unsuccessful complaint for contempt).[4]

---

[4] Of course, by statute, a court's power to modify child support retroactively is limited.  See G. L. c. 119A, § 13 (a); Calabria v. Calabria, 91 Mass. App. Ct. 763, 765 (2017), quoting Rosen, 90 Mass. App. Ct. at 683 ("In enacting § 13(a), 'the Legislature limited the power of a judge to reduce retroactively any arrearages in child support except for any period during which there is a pending complaint for modification'").

In the case of an order of child support governed by the Child Support Guidelines, "orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines promulgated by the chief justice of the trial court or if there is a need to provide for the health care coverage of the child." G. L. c. 208, § 28.  See Child Support Guidelines § III.A (2017); Morales v. Morales, 464 Mass. 507, 511-512 (2013); Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 526 n.1 (2016).

The Child Support Guidelines provide for discretionary payment of no more than "fifty percent of the undergraduate, in-state resident costs of the University of Massachusetts-Amherst, unless the Court enters written findings that a parent has the ability to pay a higher amount."  Child Support Guidelines § II.G.3.  In the commentary, the Child Support Guidelines Task Force explained that "[t]he Task Force does not intend the limitation to apply to children already enrolled in post-secondary education before the effective date of these guidelines or to parents who are financially able to pay educational expenses using assets or other resources."  Here, the older child was already enrolled in college when this guideline became effective on September 15, 2017, and the

parties agreed that each parent was financially able to pay the full educational expenses. Accordingly, Child Support Guideline § II.G.3 is inapplicable here.

Where, as here, the Child Support Guidelines do not apply, an action for modification generally requires that "the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment." Pierce v. Pierce, 455 Mass. 286, 293 (2009), quoting Schuler v. Schuler, 382 Mass. 366, 368 (1981). Accord Frost-Stuart v. Stuart, 90 Mass. App. Ct. 366, 368 (2016).[5] We discern no finding by the judge here that there was a material change of circumstances, and the sparse record provided to the judge does not make any such change of circumstances evident.

The mother committed the child to the University of Arizona without the father's consent. Under proper circumstances, a unilateral commitment to a college could constitute a material change in circumstances. But see Rosen, 90 Mass. App. Ct. at 694-695 (violation of agreement that parties would jointly participate in choice of college did not vitiate cost-sharing

---

[5] Another statutory exception applies to the duration of alimony awards. See St. 2011, c. 124, § 4 (b) ("Existing alimony awards which exceed the durational limits established in [G. L. c. 208, § 49,] shall be modified upon a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted").

agreement).  Under the scenario presented here, however, it is not evident that such a material change in circumstances exists. The scant information provided at the hearing and credited by the judge suggested that the older child was reporting his college application choices to the father, and the father raised no objection to the mother until after the older child had been accepted to only one college.  The older child expressed his desire to attend a school in a warmer climate than Massachusetts, again without apparent objection by the father to the mother.  See Cooper v. Keto, 83 Mass. App. Ct. 798, 805 (2013) (parent's "awareness of, and acquiescence in, the child's choice of [college]" constituted agreement).

Under the facts here, it is not evident that, had the mother consulted with the father prior to committing to that one college, there was any reasonable choice but to commit to the University of Arizona.  Although learning of the college commitment in May, the father set forth no proposal for a gap year or deferral of admission in the months in which the parties would have lost only the enrollment deposit by not continuing; rather, he waited until an October pleading to broach the idea, after the older child had been attending college for over one month.  See Mandel v. Mandel, 74 Mass. App. Ct. 348, 355 (2009) ("a party who has sat on his or her right to intervene, or to seek approval from the court when the parties disagree, until

the college selection process has been completed, may have waived his or her right to object to the college and its concomitant cost"). Without findings explaining the basis for any material change in circumstances, we cannot be satisfied that a modification was warranted here. See Katzman v. Healy, 77 Mass. App. Ct. 589, 594 (2010) (modification of parenting time required "findings reflecting substantial and material changed circumstances supported by the evidence").

Furthermore, even though it was uncontested that each parent had the financial means to pay for the older child's college, the judge was provided with no financial statements with which to discern the relative financial condition of the parties. Similarly, the judge had only a thumbnail sketch of the parties' communications regarding the college decision. On such limited information, it is impossible to discern a basis for a modification in the absence of findings. See Mandel, 74 Mass. App. Ct. at 354-355, quoting Schmidt v. Schmidt, 292 Ill. App. 3d 229, 237 (1997) ("In determining whether college expenses are reasonable," courts consider factors including "the financial resources of both parents, the standard of living the child would have enjoyed if the marriage had not been dissolved, the financial resources of the child, . . . the cost of the school, the programs offered at the school, the child's scholastic aptitude, how the school meets the child's goals, and

the benefits the child will receive from attending the school").
Accordingly, we must vacate so much of the judgment that
modifies the father's payment of postsecondary school education
expenses and remand for further proceedings.

3.  Motion for new trial.  A motion for a new trial or to
alter or amend a judgment "shall be served not later than 10
days after" the entry of judgment.  Mass. R. Dom. Rel. P.
59 (b), (e).[6]  Here, the modification judgment was entered on
November 8, 2017.  Because November 18 was a Saturday, the
mother had until the succeeding Monday, November 20, to serve a
rule 59 motion.  See Mass. R. Dom. Rel. P. 6 (a); Bellanti v.
Boston Pub. Health Comm'n, 70 Mass. App. Ct. 401, 406 (2007).
The mother mailed the motion to father's counsel on November 20.
"Service by mail is complete upon mailing."  Mass. R. Dom. Rel.
P. 5 (b).  The judge, however, rejected the motion as untimely,
finding that, when service of a rule 59 motion is made by mail,
Mass. R. Dom. Rel. P. 6 (d) requires that it be served three
days earlier.  This was error.

Rule 6 (d) states, "Whenever a party has the right or is
required to do some act or take some proceedings within a
prescribed period after the service of a notice or other papers
upon him and the notice or paper is served upon him by mail, 3

---

[6] These provisions are identical to Mass. R. Civ. P. 59 (b)
and (e), 365 Mass. 827 (1974).

days shall be added to the prescribed period" (emphasis added).[7]
The purpose of rule 6 (d) is to <u>add</u> time when a period is
started by the filing or service of a paper or notice that is
then mailed, rather than hand-served.  See <u>Albano</u> v. <u>Bonanza</u>
<u>Int'l Dev. Co.</u>, 5 Mass. App. Ct 692, 693 n.1 (1977); <u>Tisei</u> v.
<u>Building Inspector of Marlborough</u>, 3 Mass. App. Ct. 377, 380 n.3
(1975).  Thus, for example, if a party hand-serves
interrogatories, the recipient has thirty days[8] to serve answers
and objections.  Mass. R. Dom. Rel. P. 33 (a).  If, however, the
party serves interrogatories by mail, rule 6 (d) provides an
extra three days, or thirty-three days in all, for the recipient
to serve answers and objections.  These extra three days
represent the court system's best estimate of the maximum time
it should take, under ordinary circumstances, for the mail to
reach its recipient.

Nothing in rule 6 (d) allows a court to <u>shorten</u> the time
period to do anything.  If the father had had any time-limited
duty to respond to the mother's motion, rule 6 (d) would have

---

[7] This provision is identical to Mass. R. Civ. P. 6 (d), 365
Mass. 747 (1974).  A substantially similar provision exists in
Mass. R. A. P. 14 (c), as appearing in 481 Mass. 1626 (2019).

[8] Or up to forty-five days, if the interrogatories are
served within fifteen days of service of the summons and
complaint.  See Mass. R. Dom. Rel. P. 33 (a).

allowed him an extra three days to do so.  It, however, provides no basis for reducing the mother's time to serve her motion.

A motion under rule 59 "is addressed to the judge's sound discretion."  Gannett v. Shulman, 74 Mass. App. Ct. 606, 615 (2009).  Accord Gath v. M/A-COM, Inc., 440 Mass. 482, 492 (2003).  Where, as here, the judge was under the mistaken impression that she did not have the discretion to address a motion, the usual course of action is to "remand to allow the judge to exercise discretion in the first instance."  Balistreri v. Balistreri, 93 Mass. App. Ct. 515, 521 (2018).  Especially here, where the motion provided an e-mail exchange demonstrating that the father specifically rejected the invitation for the father to discuss the college application process through the parenting coordinator, the judge may well have wanted to consider this information.  In any event, because we are remanding, the judge will have the opportunity to consider this information and obtain a more complete picture of the college selection process.

4.  Failure to submit issue to parenting coordinator.  The relevant provision of the agreement, which merged into the divorce judgment, required the parties to submit to a parenting coordinator any "non-financial disputes regarding the[] children, limited to disputes regarding each child's education, physical and psychological health . . . , religious education,

after school and extra-curricular activities, and/or welfare and/or changes to the Parent Schedule . . . prior to their filing of any motion or complaint with the Court relative to said issue(s)."  "[P]arent coordinators, whose backgrounds may be in mental health, family law, or other relevant fields, are understood to serve as neutral third parties who assist separated or divorced parents in resolving conflicts that arise in the implementation of custody and visitation arrangements in a manner that reduces the impact of the parents' conflict on their children."  Bower v. Bournay-Bower, 469 Mass. 690, 694 (2014).  Parenting coordinators play a "valuable role . . . in assisting families involved in the Probate and Family Court system."  Id. at 707.  Parties may agree to be bound by decisions of a parenting coordinator, so long as the agreement "retain[s] the judge's 'nondelegable duty to make the final and binding resolution of the case.'"  Leon v. Cormier, 91 Mass. App. Ct. 216, 221 (2017), quoting Gravlin v. Gravlin, 89 Mass. App. Ct. 363, 366 (2016).  Regardless of any agreement, however, "the parties have the right to access the court so that the court can determine fundamental issues of care and custody and/or parenting time and support, even where the parties have agreed to binding decision-making authority of the parenting coordinator."  Probate and Family Court Standing Order 1-17 (5) (c) (iii).

The mother argues that the judge erred in considering the father's complaint for contempt where he did not submit the dispute first to the parenting coordinator.  Although it cannot be gainsaid that the judge has the discretion to refuse to hear a dispute because the parties failed to submit it first to a parenting coordinator as required by a separation agreement, see Leon, 91 Mass. App. Ct. at 221, the mother provides no support for the proposition that a judge lacks the authority to hear a dispute because a requirement to present it to a parenting coordinator was not satisfied.  As the Supreme Judicial Court recognized, there may be important disputes of such urgency that they cannot be submitted to a parenting coordinator and then effectively reviewed by a court.  See Bower, 469 Mass. at 704-705.  We need not resolve this question, however, because the parties specifically excluded financial disputes from the parenting coordinator's ken.  Here, the older child had already begun attending the University of Arizona, and the primary relief sought by the father was the reduction or elimination of his duty to pay for that education.  We discern no abuse of discretion in the judge's implicit determination that the dispute, at least as presented to the court, was a financial dispute not falling within the ambit of the parenting coordinator provision of the agreement.

5. Attorney's fees. The mother appeals the judge's failure to award her attorney's fees for defending herself against the father's complaint for contempt. "A judge has broad discretion in awarding attorney's fees under G. L. c. 208, § 38, and, it follows, broad discretion to deny an award." Freidus v. Hartwell, 80 Mass. App. Ct. 496, 504 (2011), quoting Wolcott v. Wolcott, 78 Mass. App. Ct. 539, 546 (2011). Accord M.C. v. T.K., 463 Mass. 226, 242 (2012). Here, the mother committed the older child to the University of Arizona without obtaining the father's assent. However reasonable that action may have been under the circumstances, the father had a viable complaint for contempt. Although the father's complaint about the younger child's religious upbringing may have had less viability, the judge acted well within her discretion in deciding the attorney's fees question based on the litigation as a whole, rather than disaggregating the complaint as the mother desires. See Schechter v. Schechter, 88 Mass. App. Ct. 239, 260 (2015) (listing relevant factors). Indeed, nothing in the billing records submitted by the mother provides any basis for separating out the attorney's fees between the two claims. Accordingly, "[w]e cannot say that the judge abused her broad

discretion in declining to award the wife statutory attorney's fees." Freidus, supra.[9]

6.    Conclusion.  So much of the judgment entered on November 8, 2017, as modifies each parent's obligation to pay postsecondary school education expenses for the older child is vacated, and the matter is remanded for further proceedings consistent with this opinion.  The remainder of the judgment is affirmed.  The order denying the mother's motion for new trial or to alter or amend the judgement under Mass. R. Dom. Rel. P. 59 is vacated.

So ordered.

---

[9] The mother also raises the prospect of attorney's fees under G. L. c. 231, § 6F, but she did not file a separate notice of appeal pursuant to G. L. c. 231, § 6G.  A party appealing a § 6F order incorporated into a final judgment is required to file two notices of appeal, one to appeal the § 6F order to a single justice and the other to appeal the balance of the judgment to a panel.  Troy Indus., Inc. v. Samson Mfg. Corp., 76 Mass. App. Ct. 575, 584 (2010), quoting Bailey v. Shriberg, 31 Mass. App. Ct. 277, 284 (1991).  In the absence of such, "we shall treat [the notice of appeal] only as an appeal to a panel from those portions of the judgment that are within the panel's jurisdiction."  Troy Indus., Inc., supra, quoting Bailey, supra.