NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-744

KAROLINE HILL

vs.

SEAN DEL PLATO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother, Karoline Hill, appeals from a modification judgment issued by a judge of the Probate and Family Court that awarded primary physical custody to the father, Sean Del Plato, and set the mother's child support obligations. We conclude that the trial judge acted within her discretion in relying on the court appointed probation officer's report and the child's statements found therein and that the evidence supported her determination that primary custody by the father was in the child's best interest. Further concluding that the trial judge acted within her discretion in ordering the mother to pay child support based on the mother's gross income at the time of the trial, we affirm.

1.  Custody.[1]  To obtain a custody modification, the requesting party "must first establish that a material and substantial change in circumstance has occurred to warrant a change in custody, and that the change is in the child's best interests."  E.K. v. S.C., 97 Mass. App. Ct. 403, 408 (2020).  See G. L. c. 208, § 28.  "[T]he best interests analysis is a child-centered one that focuses on the specific needs and interests of a child and how these might best be met."  Charara v. Yatim, 78 Mass. App. Ct. 325, 336 (2010).  "The judge is afforded considerable freedom to identify pertinent factors in assessing the welfare of the child and weigh them as she sees fit."  Malachi M. v. Quintina Q., 483 Mass. 725, 740 (2019), quoting Smith v. McDonald, 458 Mass. 540, 547 (2010).

"We review the judgment and the subsidiary findings of fact for abuse of discretion or other error of law."  Murray v. Super, 87 Mass. App. Ct. 146, 148 (2015).  "A trial judge's findings of fact will not be set aside unless clearly erroneous."  Altomare v. Altomare, 77 Mass. App. Ct. 601, 602 (2010).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the

---

[1] We agree with the parties that the issue of the removal of the child from the State was rendered moot by the mother's relocation to Massachusetts in 2025.

decision, such that the decision falls outside the range of reasonable alternatives."  E.K., 97 Mass. App. Ct. at 409, quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the trial judge properly concluded that a material and substantial change had occurred since the 2019 custody judgment and that modification was in the best interest of the child.  The trial judge found that, since the previous judgment granting the mother sole physical and legal custody, the child spent "significant periods of time residing primarily with both parties" and that, since June 2023, the child has "resided primarily with Father and has expressed a preference to continue doing so."[2]  The trial judge appropriately considered not only the child's stated preference to continue to live with the father during the academic year but also the benefits this setting offered the child.  The judge found that, while in the father's primary care, the child had excelled academically and

_____

[2] The trial judge detailed that the child "lived primarily with Mother from April 18, 2019 until March of 2020; she lived with the maternal grandfather from March of 2020 to May of 2020; she lived primarily with Father from May of 2020 to November of 2020; she lived primarily with Mother from November of 2020 to May of 2021; she lived primarily with Father from May of 2021 to October 2021; she lived with [the mother's former partner] from November of 2021 to December 25, 2021; she lived primarily with Father from December 25, 2021 to August of 2022; she lived primarily with Mother from August of 2022 to June of 2023; and she has lived primarily with Father from June of 2023 to the present."

3

had maintained consistent extracurricular activities, accomplishments assisted by the father's hiring of private tutors.  See Rosenthal v. Maney, 51 Mass. App. Ct. 257, 262 (2001), quoting Tolos v. Tolos, 11 Mass. App. Ct. 708, 710 (1981) ("The uprooting of a child . . . should be done only for compelling reasons").

The judge further determined that it was in the child's best interest for the father to have primary physical custody as the father "is able to provide [the child] with a stable environment in which she is comfortable and able to be herself." See Custody of Kali, 439 Mass. 834, 843 (2003) ("Stability is itself of enormous benefit to a child, and any unnecessary tampering with the status quo simply increases the risk of harm to the child").  This determination was properly informed by the child's conversation with a court appointed probation officer in August 2023.[3]  During this conversation, the child reported that she is comfortable with her father as she is able to "be myself and not just one side but all sides."  Although the child also described her relationship with her mother as "comfortable," she

---

[3] The parties stipulated to the admittance of the probation officer's report as an exhibit at trial subject to cross examination.  For this reason, the mother's argument that the child's statements amount to inadmissible hearsay is waived. See Rabinowitz v. Schenkman, 103 Mass. App. Ct. 538, 542-543 (2023).

noted the mother's yelling and threatening behavior, including the mother's threat to get rid of the child's dog and her telling the child that she will not be able to see her maternal relatives if she were to live primarily with the father. See Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting G. L. c. 208, § 31 ("The judge shall consider 'whether or not the child's present or past living conditions adversely affect his physical, mental, moral or emotional health'"). The child also described the mother's attempts to weaken the child's relationship with her father, telling her that the father "left us" and he "doesn't care about us." See Malachi M., 483 Mass. at 740, quoting Hunter, supra (judge may consider "whether one parent seeks to undermine the relationship a child has with the other parent"). Nothing required the judge to find that the mother's cooperation with the father's parenting time outweighed her statements undermining the child's relationship with the father. See Malachi M., supra.[4]

In light of these facts, we see nothing unreasonable in the judge's assigning the father "final decision-making authority"

---

[4] The mother's attempt to tease out evidence of the father's undermining the child's relationship with the mother is unpersuasive. The judge could well have determined that the minor breakdowns in communication cited by the mother are nothing like the mother's statements to the child and to the father.

if a disagreement persists after the father "confer[s] with Mother in good faith." See D.B. v. J.B., 97 Mass. App. Ct. 170, 181-182 (2020). That a requirement to confer in good faith might be difficult to enforce by contempt does not make it improper; if the requirement proves unworkable, the mother can request a different process by a modification complaint.

The mother argues that the trial judge abused her discretion in relying on the court appointed probation officer's report as the child's statements reflected the father's coaching and the probation officer's questions effectively made the child compare her parents to each other. We disagree. The court's assignment of the probation officer followed the father's complaint for modification that cited the child's preference to live with the father as a change in circumstance. Given this claim, the judge appropriately instructed the probation officer to interview the child "regarding her wishes as to school enrollment commencing September 2023."[5] As such, it was natural that the child would be asked to state her custody preferences,

---

[5] At the hearing on the father's motion for the appointment of a guardian ad litem (GAL), the mother's counsel characterized the appointment of a GAL as "premature at this point." The mother thereafter filed nothing objecting to the appointment of the probation officer or joining the father's request for a GAL. Accordingly, the mother's argument that a GAL should have been appointed is waived. See Rabinowitz, 103 Mass. App. Ct. at 542-543.

explanations of such preferences, and other relevant information that would better inform the trial judge's decision. It was within the judge's discretion to rely on the probation officer's report and the child's stated preferences therein. See R.D. v. A.H., 454 Mass. 706, 718-719 (2009).

The mother's contention that the child's statements reflected coaching by the father is unsupported by the record. The probation officer's report begins by detailing that the child "was asked if she knew why she was meeting with this Officer. She reported 'my dad wants custody of me, and I want to live with him.' [The child] further added that she was supposed 'to tell you my side of the story and where I want to live.'" The child subsequently informed the probation officer that she wanted to continue to live with the father and to continue to attend the local public school as she was interested in becoming a veterinarian and the father's town had good veterinarian schools and programs. There is nothing in the remainder of the child's interview to suggest the father unduly influenced the child's responses, and we defer to the trial judge's credibility determination. See Malachi M., 483 Mass. at 741.

4. Child support. "[T]he central inquiry in a case involving modification of . . . child support . . . is whether,

7

and to what extent, the parties' financial circumstances have changed since the entry of the prior judgment." Dolan v. Dolan, 99 Mass. App. Ct. 284, 290 (2021), quoting Emery v. Sturtevant, 91 Mass. App. Ct. 502, 508 (2017). "In the case of an order of child support governed by the Child Support Guidelines, 'orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines.'" Feinstein v. Feinstein, 95 Mass. App. Ct. 230, 234 (2019), quoting G. L. c. 208, § 28.

Here, the judge found that the mother had a "gross weekly income from employment in the amount of $3,601.75, and she has weekly rental income of $207.87, resulting in total gross weekly income of $3,809.62." Given that the father's gross income was calculated as $2,135 per week, the trial judge set the mother's child support obligation at $578 per week, retroactive to August 17, 2023.

The mother's argument that the trial judge abused her discretion in including the mother's temporary travel allowance in the child support calculations is without merit. In her findings, the trial judge noted that the mother's 2023 paystub included a travel allowance of $1,498, an allowance the mother characterized as a weekly payment she received to cover living

expenses during her employment.  As the mother acknowledges, income is defined broadly by the child support guidelines to include "gross income from whatever source."  Child Support Guidelines § 1(A) (July 2023).  Although the mother was on a temporary employment contract and this travel allowance was contingent on the mother remaining with her then employer, the trial judge properly considered the travel allowance within her calculations as it reflected the mother's income at the time.  Nothing precluded (or precludes) the mother from seeking a modification of child support at the time the travel allowance ended.  See Morales v. Morales, 464 Mass. 507, 511-512 (2013); G. L. c. 208, § 28.[6]

Judgment affirmed.

By the Court (Ditkoff, Singh & Smyth, JJ.[7]),

Clerk

Entered:  July 22, 2025.

---

[6] The father's request for appellate attorney's fees is denied.  "Although the . . . appeal is unsuccessful, it is not frivolous."  Filbey v. Carr, 98 Mass. App. Ct. 455, 462 n.10 (2020), quoting Gianareles v. Zegarowski, 467 Mass. 1012, 1015 n.4 (2014).

[7] The panelists are listed in order of seniority.